## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

| | |
|---|---|
| **SANDRA MUCCIACCIARO**,<br><br>Plaintiff,<br><br>v.<br><br>**HARTFORD LIFE AND ACCIDENT INSURANCE COMPANY**,<br><br>Defendant. | Civil Action<br>No. 22-01503<br><br>**OPINION** |

**Appearances:**

Thomas Joseph Hagner
HAGNER & ZOHLMAN, LLC
57 Kresson Road
Cherry Hill, NJ 08034

     *On behalf of Plaintiff.*

Stephanie L. Jonaitis
TROUTMAN PEPPER HAMILTON SANDERS LLP
301 Carnegie Center
Suite 400
Princeton, NJ 08543

     *On behalf of Defendant.*

**O'HEARN, District Judge.**

## I.       INTRODUCTION

Pending before the Court are Cross-Motions for Summary Judgment by Plaintiff Sandra Mucciacciaro and Defendant Hartford Life and Insurance Company (ECF Nos. 20, 22). The Court did not hear oral argument pursuant to Local Civil Rule 78.1. For the following reasons, Defendant's Motion for Summary Judgment (ECF No. 20) is denied and Plaintiff's Motion for Summary Judgment (ECF No. 22) is granted in part and denied in part.

## II.      FACTUAL BACKGROUND AND PROCEDURAL HISTORY

Plaintiff was employed by Dimensional Dental Holdings, LLC as a dental hygienist. (PSOMF, ECF No. 22-2 ¶ 1, 7), and was a participant in its health and welfare plan ("the Policy") underwritten by Defendant, (PSOMF, ECF No. 22-2 ¶ 1). In 2017, Plaintiff began experiencing back pain. (PSOMF, ECF No. 22-2 ¶ 8). Plaintiff reported this pain to her employer two years later in December 2019 with a doctor's note asking Plaintiff's employer to "please allow patient to work 30 hours/week." (PSOMF, ECF No. 22-2 ¶ 9). Plaintiff's employer denied this request and Plaintiff continued to work full-time for approximately another six months. (PSOMF, ECF No. 22-2 ¶¶ 9–10; DSOMF, ECF No. 20-3 ¶ 33). On June 3, 2020, Plaintiff gave two weeks' notice of her resignation. (PSOMF, ECF No. 22-2 ¶¶ 9–10; DSOMF, ECF No. 20-3 ¶ 33). Plaintiff worked full-time through her final date of employment on June 17, 2020. (DSOMF, ECF No. 20-3 ¶ 33). On June 14, 2020, Plaintiff requested an application for disability benefits from her employer's human resources office. (ECF No. 20, Jonaitis Decl., Ex. B at 105).

### A.   Plaintiff's Application for Long Term Disability Benefits

On or around July 25, 2020, Plaintiff submitted an application for long term disability benefits ("LTD benefits"). (ECF No. 20, Jonaitis Decl., Ex. B at 107–10). Plaintiff listed June 17, 2020 as her final day of employment and June 18, 2020 as the date on which she was first unable

to work. (ECF No. 20, Jonaitis Decl., Ex. B at 107–10). In support of her claim, Plaintiff submitted

medical evidence in the form of doctors' records and MRI results. (PSOMF, ECF No. 22-2 ¶¶ 24–

28). Defendant denied Plaintiff's claim, explaining:

> as of the date of the disability, 06/18/20, you were not covered under the Long Term
> Disability (LTD) benefits plan. Because of this, we cannot consider your claim for Long
> Term Disability (LTD) benefits.
>
> . . . .
>
> When making our decision, The Hartford had to establish what your date of Disability was.
> In doing so, we determined that your date of Disability was 06/18/2020. We came to this
> determination using the policy language you see above. In order to be considered Disabled,
> we select the date for which you first would be unable to perform the "Essential Duty" of
> Your Occupation. You can see above what defines "Essential Duty". Per your employer,
> you performed your full "Essential Duty" on 06/17/2020 to include working Your
> Occupation, unmodified, for the duration of time expected for your shift. As such, you do
> not meet the policy definition of Disability as of 06/17/2020 as you were able to perform
> all of your "Essential Duty" for this day. Thus, the first potential day that you could be
> considered for Disability from Your Own occupation would be 06/18/2020. As of this date,
> per your employer, you were no longer an Active Employee under the policy.

(ECF No. 20, Jonaitis Decl., Ex. B at 16–18).

Plaintiff appealed this decision, explaining that she misunderstood the form and

erroneously indicated that her disability began June 18, 2020. (PSOMF, ECF No. 22-2 ¶¶ 24–28).

On appeal, Plaintiff argued that the medical evidence demonstrated that her disability had

commenced in 2019. (PSOMF, ECF No. 22-2 ¶¶ 24–28). On October 22, 2020, Defendant denied

Plaintiff's appeal, explaining that it's "review has concluded that you could not be Disabled prior

to 06/18/2020 as you were performing the Essential Duties of Your Occupation and you did not

have coverage under this Policy on 6/18/20 as you had resigned on 6/17/2020." (ECF No. 20,

Jonaitis Decl., Ex. B at 6–8).

Plaintiff commenced this action on March 17, 2022. (ECF No. 1, Compl.).

### A.  The Policy

Defendant is vested with "full discretion and authority to determine eligibility for benefits and to construe and interpret all terms and provisions of the Policy, to the extent permitted by applicable state law." (DSOMF, ECF No. 20-3 ¶ 4). To be eligible for coverage under the Policy, an employee must be a "Full-time Active Employee" which requires working "at least 30 hours weekly" "on a regular basis." (ECF No. 20, Jonaitis Decl., Ex. A at 21). The Policy states, in relevant part:

> **Disability** or **Disabled** means You are prevented from performing one or more of the Essential Duties of:
> 1) Your Occupation during the Elimination Period;
> 2) Your Occupation, for the 2 year(s) following the Elimination Period, and as a result Your Current Monthly Earnings as less than 80% of Your Indexed Pre-disability Earnings, and
> 3) after that, Any Occupation.

(ECF No. 20, Jonaitis Decl., Ex. A at 21).

> **Essential Duty** means a duty that:
> 1) is substantial, not incidental;
> 2) is fundamental or inherent to the occupation; and
> 3) cannot be reasonably omitted or changed.
> Your ability to work the number of hours in Your regularly scheduled work week is an Essential Duty. However, working more than 45 hours per week is not an Essential Duty.

(ECF No. 20, Jonaitis Decl., Ex. A at 22).

> **Termination**: *When will my coverage end?*
> Your coverage will end on the earliest of the following:
>
> . . . .
>
> 6) the date You cease to be a Full-time Active Employee in an eligible class for any reason;
> unless continued in accordance with any of the Continuation Provisions.

(ECF No. 20, Jonaitis Decl., Ex. A at 12).

> **Coverage while Disabled**: *Does my insurance continue while I am Disabled and no longer an Active Employee?*

If You are Disabled and You cease to be an Active Employee, Your insurance will be continued:
1) during the Elimination Period while You remain Disabled by the same Disability; and
2) after the Elimination Period for as long as You are entitled to benefits under the Policy.

(ECF No. 20, Jonaitis Decl., Ex. A at 12).

###   III.   LEGAL STANDARD

####   A.   Summary Judgment

Under Federal Rule of Civil Procedure 56(a), courts may grant summary judgment when a case presents "no genuine dispute as to any material fact and . . . the movant is entitled to judgment as a matter of law." A party moving for summary judgment has the initial burden of showing the basis for its motion and must demonstrate that there is an absence of a genuine issue of material fact. *Baymont Franchise Sys. v. SB Hosp. Palm Springs, LLC*, No. 19-06954, 2022 WL 2063623, at *3 (D.N.J. June 8, 2022) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986)).

A genuine dispute of material fact exists only when there is sufficient evidence for a reasonable jury to find for the non-moving party. *Young v. United States*, 152 F. Supp. 3d 337, 345 (D.N.J. 2015). When the Court considers the evidence presented by the parties, "[t]he evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor." *Id.* at 346.

To withstand a properly supported motion for summary judgment, the nonmoving party must identify specific facts and affirmative evidence that contradict the moving party. *Anderson*, 477 U.S. at 250. "[I]f the non-movant's evidence is merely 'colorable' or is 'not significantly probative,' the court may grant summary judgment." *Messa v. Omaha Prop. & Cas. Ins. Co.*, 122 F. Supp. 2d 523, 528 (D.N.J. 2000) (quoting *Anderson*, 477 U.S. at 249–50); *see Dunkin' Donuts Inc. v. Patel*, 174 F. Supp. 2d 202, 210 (D.N.J. 2001) ("[A] party does not raise a genuine [dispute] of material fact by speculation and conclusory allegations."). However, "[if] reasonable minds

could differ as to the import of the evidence," summary judgment is not appropriate. *Anderson*, 477 U.S. at 250–51.

**B.   ERISA**

Section 502(a) of ERISA creates a civil cause of action for plan participants to "recover benefits due to [them] under the terms of [their] plan, to enforce [their] rights under the terms of the plan, or to clarify [their] rights to future benefits under the terms of the plan." 29 U.S.C. §1132(a); *see Fleisher v. Standard Ins. Co.*, 679 F.3d 116, 120 (3d Cir. 2012). "To assert a claim under this provision, a plan participant must demonstrate that 'he or she . . . ha[s] a right to benefits that is legally enforceable against the plan,' and that the plan administrator improperly denied those benefits." *Id.* (quoting *Hooven v. Exxon Mobil Corp.*, 465 F.3d 566, 574 (3d Cir. 2006)).

As here, "when a plan grants its administrator . . . discretionary authority, trust principles make a deferential standard of review appropriate, and a denial of benefits is reviewed under an arbitrary and capricious standard." *Brainbuilders, LLC v. Ocean Healthcare Mgmt. Grp. Benefit Plan*, No. 20-2495, 2023 WL 3167632 at *6 (D.N.J. Apr. 28, 2023) (citing *Fleisher*, 679 F.3d at 120) (cleaned up). Under the narrow scope of arbitrary and capricious review, "[a] court is not free to substitute its own judgment for that of the [administrator] in determining eligibility for plan benefits." *Doroshow v. Hartford Live and Acc. Ins. Co.*, 574 F.3d 230, 234 (3d Cir. 2009). Rather a decision is arbitrary and capricious "if it is without reason, unsupported by substantial evidence or erroneous as a matter of law." *Miller v. Am. Airlines, Inc.*, 632 F.3d 837, 845 (3d Cir. 2011) (citation omitted).

**IV.   DISCUSSION**

The question presented by the parties' cross-motions is a very narrow one: was it arbitrary and capricious for Defendant to determine that Plaintiff was not disabled before June 18, 2020 based solely on the fact that she was working full-time—and, thus, performing all the essential

6

functions of her job—without conducting a substantive review of the medical evidence provided in her claim?[1]

Plaintiff argues that Defendant's decision was arbitrary and capricious because it was based solely on the fact that she was working full-time to find that she was not disabled under the Policy. (Pla. Motion, ECF No. 22-1 at 10–11). She further submits that her reports of pain to her employer and request for an accommodation show that she met the definition of disabled well before she left her employment. (Pla. Motion, ECF No. 22-1 at 11–12). Defendant counters that its decision is supported by substantial evidence because, per the strict language of the Policy, Plaintiff was performing all the essential functions of her job up until her voluntary resignation after which she was not a full-time employee eligible for benefits. (Def. Motion, ECF No. 20-1 at 11–12).

For the reasons that follow, this Court cannot find that Defendant's decision was supported by substantial evidence, nor can it find, as a matter of law, that Plaintiff is entitled to benefits. Thus, this Court will remand the issue to Defendant to conduct a substantive review of Plaintiff's claim consistent with this Opinion.

The Third Circuit has not addressed the specific issue presented in this case but other circuits have suggested that the ability to work full-time should not automatically in and of itself prohibit a finding of disability. *See Levinson v. Reliance Standard Life Ins. Co.*, 245 F.3d 1321, 1326 n.6 (11th Cir. 2001) ("We doubt that Levinson's status as a full-time employee constitutes evidence that he was able to perform the material duties of his occupation on a full-time basis."); *Perlman v. Swiss Bank Corp. Comprehensive Disability Protection Plan*, 195 F.3d 975, 983 (7th

---

[1] Defendant's decision found Plaintiff's date of disability to be June 18, 2020. If this was in fact the first date on which Plaintiff was disabled, Defendant's decision cannot be found to have been arbitrary and capricious because, as of the date of disability, Plaintiff admittedly was not a "Full-time Active Employee" under the Policy. Plaintiff does not appear to dispute this. This Court's inquiry is therefore limited to whether Plaintiff meets the definition for disability before June 18, 2020, during the time in which she was a full-time employee.

Cir. 1999) ("Some people manage to work [with a disability] for months, if not years, only as a result of superhuman effort, which cannot be sustained . . . . Reality eventually prevails, however, and limitations that have been present all along overtake even the most determined effort to keep working."); *Wuollet v. Short-Term Disability Plan of RSKCo*, 360 F. Supp. 2d 994, 1009 (D. Minn. 2005) ("It is doubtful that Wuollet's status as a full-time employee up to June 2002 is evidence that she was able to perform the material and substantial duties of her regular occupation after June 2002."). The 11th Circuit has even expressly rejected an argument that a plaintiff was not disabled because she was able to maintain full attendance for two days in an attempt to return to work despite her disability. *Marecek v. BellSouth Telecommunications, Inc.*, 49 F.3d 702, 706 (11th Cir. 1995) ("BellSouth focused on Marecek's attendance on September 19 and 20, 1988 as evidence that she could work. However, Marecek 'gave it a go' and her attempt to work does not forever bar her collection of sickness disability benefits.").

Notably neither party has provided—nor has the Court's independent research revealed —a case where the claim administrator relied on attendance or ability to work alone to determine an employee was not disabled. Rather, in all of the relevant cases, plan administrators evaluated the medical evidence provided, using job attendance as *one* of many considerations in their decision.

In further support of Plaintiff's position that Defendant's decision was arbitrary and capricious is the fact that Plaintiff requested an accommodation from her employer. *See Perlman*, 195 F.3d at 983 ("If Perlman were devoted to the workforce beyond her abilities, then likely she would have asked Swiss Bank for an accommodation."). The parties present different interpretations of this fact. Plaintiff suggests it is evidence that she was disabled and substantially unable to work full-time. (Pla. Motion, ECF No. 22-1 at 10–11). Defendant disagrees, highlighting that Plaintiff's ability to continue to work full-time after her request was denied demonstrates that she was in fact capable of working full-time. (Def. Br. In Opp., ECF No. 25 at 4–5). This Court

agrees with Plaintiff. It is illogical to suggest that a request for accommodation—and subsequent continuation of work despite the denial of that request—could weigh against a finding of disability or per se preclude a finding of disability. To the contrary, such evidence substantiates Plaintiff's claim that she was in fact struggling to continue to work despite her disabilities and the employer's denial of the accommodation she requested. At a minimum, it casts serious doubt on Defendant's decision which relied exclusively on Plaintiff's ability to work full-time.

Thus, the Court has concerns as to (1) Defendant's determination that a finding of disability is precluded simply because an employee has continued to work, and (2) the underlying factual accuracy of its decision to deny Plaintiff benefits where it made no substantive inquiry or analysis to support that decision. As a result, Defendant's decision, finding Plaintiff was not disabled before June 18, 2020 for the sole reason that she was working full-time without conducting a substantive review of the medical evidence provided in her claim was arbitrary and capricious. To find otherwise would fail to recognize the ability of many persons with disabilities to persevere despite their disability, often at great cost to their physical and mental health. There are innumerable reasons a person would attempt to maintain their employment despite these costs, one very obvious one being the continuance of health insurance. This "superhuman effort" cannot serve as the sole reason for the denial of disability benefits. *Perlman*, 195 F.3d at 983. This is especially true where individuals like Plaintiff request accommodations to allow them to continue their employment.

To uphold Defendant's decision would also be irreconcilable with the language of the Policy as written which requires the disability to arise while an employee is a "Full-time Active Employee" working at least thirty hours weekly on a regular basis. (ECF No. 20, Jonaitis Decl., Ex. A at 21). If Defendant could lawfully deny an employee's disability claim simply because they are working full-time—and thus per se not disabled—then the employee would necessarily be forced to reduce their hours or leave employment to establish a disability. Reducing hours or

leaving could, however, have the effect of terminating the employee's coverage for failure to maintain their status as a Full-time Active Employee. This is not a hypothetical or speculative result—it is the exact circumstances in which Plaintiff's found herself. If Defendant's interpretation was correct, Plaintiff was presented with a catch-22: continue working full-time and never be able to prove herself disabled under the Policy or stop working and lose coverage. Under this theory, no employee could qualify for disability and that simply cannot be how the Policy is interpreted.

Having found that Defendant's decision is not supported by substantial evidence, the Court turns to Plaintiff's request that the Court grant her benefits. This Court declines to do so and finds that remand is appropriate so that Defendant may conduct an appropriate analysis and substantively consider Plaintiff's claim, including all relevant medical evidence submitted, and provide a well-reasoned decision. *See Shvartsman v. Long Term Disability Income Plan for Choices Eligible Emps. of Johnson & Johnson*, No. 11-3643, 2013 WL 1615649, at *4 (D.N.J. Apr. 12, 2013) (citation omitted) ("Defendant is still obligated under ERISA to provide a well-reasoned explanation of its decision."). Both parties focused their Motions substantially on the question of whether Defendant could rely on Plaintiff's full-time work status to deny her claim and spent little to no time addressing the merits of Plaintiff's medical evidence. Thus, on this record, the Court finds remand more appropriate than conducting a de novo review of the medical evidence. *See Wernicki-Stevens v. Reliance Standard Life Ins. Co.*, 641 F. Supp. 2d 418, 429 (E.D. Pa. 2009) ("Because the administrative record is insufficient for the Court to determine to what extent, if any, Plaintiff's "total disability" status prior to May 3, 2007 was based on a neuropsychological impairment, the Court will remand the case to the claim administrator . . . for further evaluation consistent with this opinion.").

## V.    <u>CONCLUSION</u>

For the foregoing reasons, Defendant's Motion for Summary Judgment (ECF No. 20) is denied and Plaintiff's Motion for Summary Judgment (ECF No. 22) is granted in part and denied in part. Plaintiff's claim is remanded; Defendant shall conduct a substantive investigation consistent with this Opinion. An appropriate Order will follow.

**CHRISTINE P. O'HEARN**
**United States District Judge**

11